THE STATE EX REL. THE METROPOLITAN PLATE GLASS INSUR-ANCE COMPANY OF NEW YORK, Appellant, vs. FRICKE, Commissioner of Insurance, Respondent.

*November 23, 1898 — February 21, 1899.*

*Accident insurance: Plate glass: License fees.*

A company transacting only the business of insuring plate glass against injury from causes other than fire or lightning is an accident insurance company, within the meaning of our statutes regulating the business of insurance, and as such was required to pay, for the privilege of doing business in this state, an annual license fee of $300 under sec. 1220, R. S. 1878, as well as two per cent. on its gross premiums received in this state, under ch. 105, Laws of 1880.

APPEAL from a judgment of the circuit court for Dane county: R. G. SIEBECKER, Circuit Judge. *Affirmed.*

This case differs from the preceding case of *State ex rel. Fidelity & Casualty Co. v. Fricke, ante,* p. 107, only in that the relator is a corporation organized for and engaged in only the business of insuring plate glass against injury otherwise than by fire. Said relator commenced business in the state of Wisconsin in 1884, and has annually thenceforward paid to the commissioner of insurance two per cent. on its gross premiums received in this state, including those received in 1897, and has applied for a license to do business for the year beginning March 1, 1898. The commissioner of insurance now claims that in each of said years from 1884 to 1898 said company should also have paid the license fee

of $300 required by sec. 1220, R. S. 1878, from all companies engaged in the business of accidental insurance in the state of Wisconsin, and on March 18, 1898, refused to issue a license for the ensuing year, unless said license fees, amounting with interest from the dates when they were respectively due to $6,540, were paid. The relator in this action prays for a writ of *mandamus* requiring the respondent, as commissioner of insurance, to issue to said corporation a license authorizing it to do the business of plate-glass insurance within the state of Wisconsin during the period of one year, commencing March 1, 1898, and offers to pay whatever sum the court may decide is legally due.

For the appellant there was a brief by *Winkler, Flanders, Smith, Bottum & Vilas,* and oral argument by *F. C. Winkler.*

*John L. Erdall,* first assistant attorney general, for the respondent.

The following opinion was filed December 16, 1898:

DODGE, J. It is of course unnecessary, again, in this case to discuss the questions disposed of in the *Fidelity & Casualty Company Case.* That accident insurance companies were required by the statutes existing in March of the present year to pay, not only two per cent. on the gross premiums received during the year 1897, but also a license fee of $300, is established, as also the conclusion that this court will not by *mandamus* restrain the commissioner from making the payment of any delinquent fees for past years, together with interest thereon, a condition of issuing a license, whether or not an action to recover any such fees would be barred by the statute of limitations.

The relator strenuously contends, however, that even though such conclusion be reached with reference to the Fidelity & Casualty Company, engaged in the business of insuring against death or injury from accidents to the person of the assured, yet a clear distinction exists in favor of

the present corporation, which can and does only insure against injuries to plate glass from causes other than fire; insisting that such a company does not come within the description of sec. 1220, imposing a $300 license fee on "every company transacting the business of life or accidental insurance in this state;" arguing with much force, and much support from the authorities, that at and prior to the year 1878, when sec. 1220 was adopted as a revision of statutes existing since 1870, the words "accident insurance" or "accidental insurance" did not embrace anything besides insurance against accidents to the person insured,— citing to this proposition Beach, Ins. § 211, to which might added Bouv. Law Dict. (1897), 1076; *Employers' L. Ass. Corp. v. Merrill,* 155 Mass. 404.

If it be conceded, however, that sec. 1220, which imposes the $300 license fee upon every company doing the business of accident insurance in this state, would not, when enacted, have applied to the relator, it follows that the relator could not at that time have engaged in its peculiar business in the state of Wisconsin. Sec. 1978 provided: "No corporation, association, partnership, or individual shall do any business of insurance of any kind, or make any guaranty, contract or pledge for the payment of annuities or endowments, or money to the families or representatives of any policy or certificate holder, or the like, in this state, or with any resident of this state, except according to the conditions and restrictions of these statutes. And the term insurance corporation, as used in this chapter, may be taken to embrace every corporation, association, partnership, or individual engaging in any such business." It could not be contended that any other section than 1220 could be so applicable to the business of plate-glass insurance as to authorize its conduct in the state.

By ch. 105, Laws of 1880, "accident insurance companies" were authorized to insure against injuries to property by causes other than fire or lightning; and no other statute is

State ex rel. Metropolitan Plate Glass Ins. Co. of New York vs. Fricke

pointed out, or believed to exist, which could authorize the conduct of the relator's business in the state from that time until the Wisconsin Statutes of 1898. It must be assumed, therefore, that its applications for licenses from 1884 onward have been made and granted under the authority of the last-mentioned statute [ch. 105, Laws of 1880]. It will be observed, however, that ch. 105, Laws of 1880, authorizes this kind of business to be done only by *accident insurance companies,* which expression is, of course, to have the same meaning as elsewhere in the insurance statutes; this act of 1880 being not an isolated piece of legislation, but part of a system of statutory regulation of insurance business. We seem, therefore, to be driven into a dilemma which may be stated as follows: If a company transacting only the business of insuring plate glass against injury from causes other than fire or lightning is an accident insurance company, within the meaning of the insurance regulations, then sec. 1220 of the Revised Statutes has required that it pay each year a license fee of $300. If, however, such a company is not an accident insurance company, it has no authority to conduct its business in this state. Being driven into this dilemma, we have next to consider which horn of it to choose,— whether to decide that the expression "accident insurance companies," in ch. 105, Laws of 1880, was used in a strictly limited sense, meaning only companies which are engaged in the business of insuring against accidents to the person of the assured, and is an authority only to that class of companies to do the additional business of insurance against injuries to property from causes other than fire, or to hold that the legislature in 1880 meant to legislate that all of said varieties of insurance should come under the classification of accidental insurance and might be written in this state by any corporation authorized so to do by its charter, whether also authorized to write insurance for personal accidents as well or not.

It would seem, in view of the development of the business apparent from the records in the office of the commissioner

State ex rel. Metropolitan Plate Glass Ins. Co. of New York vs. Fricke.

of insurance and from the showing of this relator, that the interests of the citizens of Wisconsin demanded plate-glass insurance, and we may therefore infer that the legislature in 1880 meant to recognize and provide for this demand. In order to accomplish that result fully, the latter construction is necessary, namely, that a company authorized by its charter merely to write insurance against injuries to property by causes other than fire is authorized to do business in this state, and, as a result, that it is legislatively declared to be an accident insurance company, within the meaning of our statutes.

The adoption of this construction of the statute does no violence to its language. Accident insurance, colloquially, easily includes insurance against injuries to plate glass. Nor is it one of which the relator certainly can complain, for ever since 1884 that company has availed itself of the privilege of doing business in this state, and can have found its authority nowhere save in such a construction of this statute of 1880.

The relator is therefore in the same position, and subject to the same charges, as the Fidelity & Casualty Company, and was required by law to pay each year, not only two per cent. on its gross premiums received in this state, but also, on or before March 1st of each year, a license fee of $300. The circuit court was right in refusing a peremptory writ of *mandamus* to compel issue of license until these annual fees be paid, with interest from the several dates when they were respectively due by law.

*By the Court.*— The judgment of the circuit court is affirmed.

Upon a motion for a rehearing there was a brief for the appellant by *Winkler, Flanders, Smith, Bottum & Vilas,* and a brief for the respondent by *E. R. Hicks,* Attorney General.

The motion was denied February 21, 1899.